# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DAVID W. FREE,

          **Petitioner,**

        **-vs-**                      **Case No. 12-C-0711**

BRIAN FOSTER, Warden,
Kettle Moraine Correctional Institution,

          **Respondent.**

## DECISION AND ORDER

Petitioner David W. Free ("Free") petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Free raises the following two grounds for relief: (1) prosecutorial misconduct and (2) ineffective assistance of counsel. (Pet. 15-17.) (ECF No. 1.) The following factual background is consistent with the facts as found by the Wisconsin Court of Appeals. *See State v. Free,* No. 2010AP2441-CR, 337 Wis. 2d 90, 803 N.W. 2d 868, 2011 WL 2848838 (Wis. Ct. App. July 20, 2011) (Table) (unpublished disposition.)

## BACKGROUND

Free and Cassandra Sax ("Sax") went out to dinner with Sax's neighbors, and then the four went to a bar to shoot darts. (Answer Ex. I-1 (Jan. 8, 2008, Trial Tr.) 107-09.) (ECF No. 11-9.) Free and Sax were

drinking throughout the evening, and an ongoing argument ensued. (*Id.* at 108-14.) After the two were dropped off at Sax's house, the argument escalated into physical violence. Sax sustained a black eye, a chipped tooth, a chest wound, and, according to the trial testimony of her treating cardiothoracic surgeon, a punctured lung. (*Id.* at 44.)

Sax claimed that Free punched her in the face so hard she lost her balance, and as she rose Free stabbed her in the chest with something sharp, although she did not know what. (Answer Ex. I-2 (Jan. 8, 2008, Trial Tr.), 124-28.) She said Free refused to let her call for help and would not let her leave her bedroom for approximately four hours. (*Id.* at 136-47.)

According to Free, Sax hit him first and he hit her in return, which caused her to spin around and fall onto the kitchen counter. (*Id.* at Ex. L (Jan. 10, 2008, Trial Tr.) 42-43.) (ECF No. 11-13.) He said he did not stab her, nor did he see anything sharp on the counter, and he did not know how she received the injury. (*Id.* at 46-48.) He said that Sax refused medical help beyond the first aid he gave her—towels and a couple of Band-Aids to stop the bleeding. (*Id.* at 47-50, 88-89.)

Free was charged with attempted first-degree homicide, aggravated battery by use of a dangerous weapon, substantial battery and false

- 2 -

imprisonment. (Answer Ex. E 2.) (ECF No. 11-5.) After a five-day trial, the jury rejected the first-degree homicide charge, instead convicting Free of a lesser-included charge of first-degree recklessly endangering safety; it also found him guilty of the other three charges. (*Id.*)

Free, with newly-appointed counsel, moved for postconviction relief, alleging that trial counsel Mark Nielsen ("Nielsen") had been ineffective for failing to call a medical expert who could rebut the state's case. The motion did not state what the expert would have established, and it was denied by the trial court. Free appealed. (*Id.* at 2-3.)

Free retained new postconviction counsel. The state court of appeals permitted the withdrawal of his appointed counsel and allowed Free to dismiss his appeal and file a new postconviction motion. (Mem. Supp. Pet. 2) (ECF No. 20.) The trial court again denied Free's motion, the state court of appeals affirmed the trial court's decision, and the Wisconsin Supreme Court denied Free's petition for review. (*Id.* at 2-3.)

## STANDARD OF REVIEW

Federal district courts have authority to grant habeas relief for a petitioner in state custody under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Makiel v. Butler*, 782 F.3d 882, 896 (7th Cir. 2015). The standard is "'highly

deferential . . . [to] state-court rulings,' which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (citation omitted). This Court can only grant habeas relief if the state court's judgment was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1), (2).

To determine clearly established federal law, the Court must look to "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Typically, determining the relevant legal principle will be straightforward. *Id.* at 72. Under § 2254(d)(1), "contrary to" and "unreasonable application" have an independent meaning. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court's decision is contrary to federal law if it applies a rule different from the governing law set forth in Supreme Court cases, or if it decides a case differently than Supreme Court precedent with materially indistinguishable facts. *Id.*

The state court's application of clearly established federal law is

- 4 -

unreasonable "if the state court correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "That is, 'the state court's decision must have been [not only] incorrect or erroneous [but] objectively unreasonable.'" *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (citation omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786-787 (2011); *White v. Woodall,* 134 S. Ct. 1697, 1702 (2014). (Parallel citations omitted). Further, this Court's "review under § 2254(d) is limited to the record that was before the state court." *Makiel,* 782 F.3d at 896.

### *Prosecutorial Misconduct*

Free's prosecutorial misconduct claim centers on rebuttal testimony by Sax. Free argues that until rebuttal Sax maintained that she had not observed his hands or the object she was stabbed with. In her rebuttal testimony on the fourth day of trial, however, Sax testified that Free stabbed her "like this," and demonstrated a motion the trial court

- 5 -

described as "[m]uch as one would swing a hammer." (Answer Ex. E, 3-4.)

Free's trial lawyer attempted to parlay this new description into a credibility issue:

> Now she's telling us that she did see the hand and that the only thing she didn't see was the weapon in the hand. But she saw the action of stabbing. Now this is an important detail. You may recall when that came up for the first time ever yesterday—

(*Id.* at 4.) The prosecutor objected, hinting that Sax had previously made similar statements, but that they were not disclosed to the jury due to evidentiary rules that prior consistent statements are not admissible. (*Id.*) He reiterated that contention in his closing argument stating, "all the times she may have said that on previous occasions . . . it was the same arm motion, same situation, it doesn't get to be brought before you" and that it was "unfair" for defense counsel to suggest otherwise. (*Id.*)

The trial court rejected Free's claim of prosecutorial misconduct, reasoning that the instances of misconduct were of such "*de minimus* effect so as not to affect the outcome of the trial." (*Id.*) The state court of appeals agreed, stating that even if the prosecutor's remarks were improper, they did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." (*Id.* at 4-5) (quoting *State v. Wolff*, 171 Wis. 2d 161, 491 N.W.2d 498, 501 (Wis. Ct. App. 1992).)

- 6 -

In addressing Free's prosecutorial misconduct claim, the Wisconsin Court of Appeals applied several state court decisions: *State v. Lettice*, 205 Wis. 2d 347, 556 N.W.2d 376, 378 (Wis. Ct. App. 1996), stating that prosecutorial misconduct violates due process "if [it] poisons the entire atmosphere of the trial;" *State v. Harrell*, 85 Wis. 2d 331, 270 N.W.2d 428, 432 (Wis. Ct. App. 1978), stating that the defendant bears the burden of establishing intentional prosecutorial misconduct; and *Wolff,* 491 N.W.2d at 501, stating that the test to be applied when a prosecutor is charged with misconduct for remarks made in argument to the jury is whether those remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (quoting *Darden v. Wainwright,* 477 U.S. 168, 181 (1986)). (Additional citation omitted).

Free asserts that the state appeals court's prosecutorial misconduct decision was "contrary to" clearly established federal law because the prosecutor affirmatively mislead the jury in an attempt to rehabilitate Sax, and the court should have applied the following decisions: *Mooney v. Holohan,* 294 U.S. 103, 112 (1935) ("deliberate deception of court and jury by the presentation of testimony known to be perjured . . . is . . . inconsistent with the rudimentary demands of justice"); *Miller v. Pate*, 386 U.S. 1 (1967); *Giglio v. United States,* 405 U.S. 150 (1972) (which extended

*Brady v. Maryland,* 373 U.S. 83, 87 (1963), "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution" to the failure to disclosure evidence which was material to the credibility of a key witness); and *United States v. Agurs,* 427 U.S. 97, 103 (1976) (characterizing *Brady* as applying to three situations which involve "the discovery, after trial of information which had been known to the prosecution but unknown to the defense"). He maintains that "[w]hile the prosecutor is permitted to argue from the evidence, he is not permitted to mislead the jury" citing *Miller*, 386 U.S. 1, which he states held that the "prosecutor violated due process by arguing to jury that shorts were stained with blood when he knew it was paint." (Mem. Supp. Pet 15.)

However, the prosecutorial misconduct at issue in *Miller* involved more than improper argument that the large, dark, reddish-brown stains on the shorts were blood; that is, the "state criminal conviction [was] obtained by the knowing use of false evidence.*" Miller,* 386 U.S. at 7. Miller was charged with the murder of an 8-year-old girl who died as the result of a brutal sexual attack; there were no eyewitnesses. *Id.* at 2, 3. The prosecutor opposed Miller's pretrial motion for scientific examination

of the physical evidence that the prosecution intended to introduce, and the motion was denied. *Id*. at 2. Throughout the trial "'blood stained shorts'" were a "vital part" of the prosecution: "they were an important link in the circumstantial evidence" against Miller. *Id*. at 4. The prosecution consistently and repeatedly misrepresented that the shorts were "'heavily stained with blood.'" *Id*. at 6. With respect to the exhibit, the prosecution's theory that the assailant had discarded the shorts because they were stained with blood depended upon that misrepresentation. *Id*.

The circumstances of this case are not analogous to the misconduct in *Miller*, which in addition to improper argument involved intentionally withholding evidence that the substance on the shorts was paint. While Free has cited snippets of Supreme Court decisions, he has not shown that the Wisconsin Court of Appeals decision on the issue of prosecutorial misconduct applied a rule different from the governing law set forth in Supreme Court cases, or that it decided Free's case differently than Supreme Court precedent with materially indistinguishable facts. *Williams*, 529 U.S. at 405.

Next, the Court must determine whether the state court of appeals unreasonably applied clearly established federal law. Foster maintains

- 9 -

that the governing legal principle for prosecutorial misconduct is found in *United States v. Young*, 470 U.S. 1, 16 (1985), which states that a defendant must show that the inappropriate argument undermined the fundamental fairness of the trial and contributed to a miscarriage of justice. The prosecutor's statement or conduct must "be viewed in context; only by doing so can it be determined whether the prosecutor's conduct offended the fairness of the trial." *Young*, 470 U.S. at 11. The prosecutor's comments must be "so serious that [they] poison[] the entire atmosphere of the trial." *United States v. Pirovolos*, 844 F.2d 415, 425 (7th Cir. 1988).

In *Darden*, 477 U.S. at 181, the Supreme Court established a two-prong test for determining whether a prosecutor's comments in closing argument constituted a denial of due process. First, a court determines whether the comments were improper. If they were, then the court must consider a number of factors to determine whether petitioner was prejudiced by the comments. *See Ellison v. Acevedo*, 593 F.3d 625, 635-36 (7th Cir. 2010). The factors that determine whether a petitioner was prejudiced include: (1) whether the prosecutor misstated the evidence; (2) whether the remarks implicate a specific right of petitioner; (3) whether the petitioner invited the response; (4) the trial court's instructions to the jury; (5) the weight of evidence against the petitioner; and (6) the

- 10 -

petitioner's opportunity to rebut. *Id.* In determining prejudice, "the relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (quoting *Darden,* 477 U.S. at 181).

The trial court applied the general standard requiring the defendant to show that the prosecutorial misconduct impacted the trial in some manner. On appeal, Free argued that the prosecution attempted to rehabilitate Sax's credibility by making false assertions to the jury. (Mem. Supp. Pet. 12.) However, Free's argument was rejected by the appeals court because it determined that the prosecutor's assertions did not infect the trial with unfairness or detrimentally change the result the jury reached. (Answer Ex. E, 5.)

As required under the AEDPA, this Court gives deference to state court decisions. *See Hardaway v. Young*, 302 F.3d 757, 768 (7th Cir. 2002). Although the Wisconsin Court of Appeals did not mention *Darden* or explicitly discuss the *Darden* factors, it applied the *Darden* standard in concluding that the prosecutor's assertions in rebuttal and closing argument did not undermine the fairness of the trial. It relied on the jury's ability to follow the trial court's instruction that arguments are not evidence and to disregard any arguments about any facts not in evidence.

- 11 -

Furthermore, it found that the prosecutor's suggestion that Sax made prior hammer-swing comments could not have bolstered her credibility because the comments contradicted her prior testimony and were not in accord with the severity of her wound.  It also concluded that the reason the jury found Free guilty of recklessly endangering safety rather than the more serious attempted homicide charge was that the jury did not buy Sax's "late stage description of the assault."  This court adds that the remarks did not implicate any specific right of Free, and he had the opportunity to rebut them.  Therefore, Free has not shown that the state court of appeals unreasonably applied clearly established federal law when it determined Free had not established that the prosecutor's remarks infected the trial with unfairness or detrimentally changed the result the jury reached

### Ineffective Assistance of Counsel

For claims of ineffective assistance of counsel, the *Strickland* standard governs whether counsel's performance is constitutionally effective.  *Harrington v. Richter,* 562 U.S. 86, 102 (2011).  *Strickland* dictates that the party making the ineffective assistance claim must show (1) that counsel's representation fell below an objective standard of reasonableness *and* (2) that there is a reasonable probability that, but for

- 12 -

counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 694. Both prongs of *Strickland* must be met for an ineffective claim to be colorable. *See id.* at 697. Ineffective assistance of counsel is a single claim no matter the number of attorney errors it is based on. *See Peoples v. United States,* 403 F.3d 844, 847-48 (7th Cir. 2005).

Free asserts that the Wisconsin court of appeals unreasonably applied the standard when determining whether his constitutional right to effective assistance of counsel was violated by Nielsen's failure to: (1) obtain a stipulation or to cross-examine Sax regarding her allegations of threats to her daughter, (2) cross-examine Sax regarding admissions contrary to her "hammer swing," description and (3) object to possible prosecutorial misconduct. (Pet. 17-19.)

He also maintains that the state court decision was contrary to the law because it applied the wrong legal standard in determining whether he was prejudiced by the claimed deficiencies, citing the court of appeals statement that "[t]o show prejudice [on his ineffectiveness claims, Free] must demonstrate that Nielsen's errors were so serious that the result of the proceeding was unreliable." (Answer Ex. E, 7-8.)

*Counsel's Performance*

Free asserts that the state appeals court did not address or dispute deficient performance on two of the three claims; and as to the third, it addressed only the reasonableness of trial counsel's initial thoughts on how to respond to Sax's inflammatory perjury, and not the reasonableness of his ultimate decision. Thus, Free urges de novo review.

When a defendant asserts an ineffectiveness claim, trial counsel's performance is measured against an objective standard of reasonableness, under prevailing professional norms. *Rompilla*, 545 U.S. at 380. When deciding an ineffectiveness claim, the court must assess the reasonableness of counsel's challenged conduct on the facts of the case, viewed at the time of the counsel's conduct. *Strickland*, 466 U.S. at 690.

This standard is viewed through the lens of § 2254(d)(1)'s "contrary to" or "unreasonable application of" provisions: "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter,* 562 U.S. at 105. A habeas petitioner "'must do more than show he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance. . . . [H]e must show that the [Wisconsin Court of Appeals] applied *Strickland*

- 14 -

to the facts of his case in an objectively unreasonable manner.'" *Emerson v. Shaw,* 575 F.3d 680, 685 (7th Cir. 2009) (quoting *Bell v. Cone,* 535 U.S. at 698-99).

Contrary to Free's contention, the Wisconsin Court of Appeals addressed Nielsen's failure to obtain a stipulation or to cross-examine Sax concerning Free's alleged threats to harm her young daughter. *Free,* 2011 WL 2848838, at *4. Discovery materials disclosed that Sax said she feared calling the police after the attack because Free threatened to kill her and to "slash [the daughter's] fuckin' throat." *Id.* Sax later clarified that Free had made such threats on multiple other occasions, most recently about a week earlier, but not on this particular night. *Id.*

Before trial, the prosecutor, Nielsen, and Free agreed that Sax would testify that she delayed calling the police because Free threatened her and her child but that she would make no reference to when or under what circumstances he allegedly made the threats; and the prosecutor agreed to instruct Sax accordingly. *Id.* at *5. However, on direct examination Sax testified that Free told her that night he would kill her and would "slash [the daughter's] fuckin' throat" if she involved the police. *Id.* Sax repeated a toned-down version of that claim on cross-examination. *Id.*

- 15 -

The state court of appeals relied upon Nielsen's postconviction motion hearing testimony that when the agreement "blew up," he "really [did]n't want to get into the question of how often [his] client threatened to slash the little girl's throat." *Id.* While noting that Nielsen conceded he could have had Sax stipulate to the agreed-upon testimony and then impeached her with it, or called the prosecutor as a witness, the court of appeals upheld the trial court's finding that Nielsen's instantaneous decision was to not object and draw further attention to the statement, and it concluded the decision was a reasonable strategy *Id.* The Wisconsin appeals court's decision properly focused on counsel's decision at the time of the conduct. *See Strickland*, 466 U.S. at 690. Free has not shown that the Wisconsin appellate court applied the performance prong in an objectively unreasonable manner. *See Emerson,* 575 F.3d at 685.

The state court of appeals also addressed Nielsen's failure to object to the "hammer-swing" motion, concluding that "[t]he hammer-swing description was inherently incredible," so even if he could have capitalized on the inconsistency of Sax's statements, "counsel's failure was [not] deficient." *Free,* 2011 WL 2848838, at \*5. Contrary to Free's contention, the state appellate court found counsel's performance with respect to the "hammer swing" was not deficient. Because there is a reasonable

argument that counsel satisfied *Strickland*'s deferential standard," *Richter,* 562 U.S. at 105, that determination must be upheld.

The court of appeals also addressed Nielsen's failure to object to the misconduct in the prosecutor's closing argument. Again it concluded that the "hammer-swing" testimony was not believable and that the admonitory instructions cured any error. *Free,* 2011 WL 2848838, at *5. Therefore, Nielsen's failure was not deficient. The court of appeals determination is not an unreasonable application of *Strickland* to the prosecutorial misconduct claim. It reasonably relied on the unbelievable nature of the hammer-swing testimony and the jury's adherence to the admonitory instruction which stated that closing arguments are not evidence and that the jury must decide the case on the evidence. (Answer Ex. M, 12, 29.)

In sum, when considering Free's performance claims, both individually and collectively, this Court concludes that the Wisconsin Court of Appeals did not unreasonably apply the performance prong of *Strickland.* Therefore*,* its denial of Free's ineffective assistance of counsel claim must be upheld. The combined effect of the foregoing conclusions means that Free's petition for habeas corpus relief is denied.

However, the Court briefly addresses Free's assertion that the

- 17 -

Wisconsin Court of Appeals applied a "reliability" standard for resulting prejudice, which — as the Seventh Circuit has noted in granting habeas relief to Wisconsin prisoners, citing *Goodman v. Bertrand*, 467 F.3d 1022, 1028 (7th Cir. 2006), *Martin v. Grosshans*, 424 F.3d 588, 592 (7th Cir. 2005), and *Washington v. Smith*, 219 F.3d 620, 632 (7th Cir. 2000) — is a standard that the Supreme Court expressly rejected more than a decade ago, Foster's opposition brief does not mention this contention.

The Wisconsin Court of Appeals began its analysis of his ineffective assistance of counsel claim by stating, '[t]o prevail on this claim, Free must show that Nielsen's performance was deficient and that he was prejudiced as a result of this deficient conduct," citing *Strickland,* 466 U.S. at 687, and a state counterpart *State v. Taylor,* 272 Wis. 2d 642, 679 N.W.2d 893 (Wis. Ct. App. 2004.) Citing to *Taylor*, 679 N.W.2d at 899, the court further stated: "To show prejudice, he must demonstrate that Nielsen's errors were so serious that the result of the proceeding was unreliable." *Free,* 2011 WL 2848838, at *4.

Indeed, *Strickland* states that "[t]his requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the

- 18 -

adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687. However, the quoted language is *not* the test for prejudice under *Strickland*. The oft-repeated standard for establishing prejudice under Strickland is that a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Prejudice is mentioned several times in the Wisconsin Court of Appeals' opinion. However, close examination of the opinion does not provide a basis for concluding that the correct standard was applied.

The appeals court further discussed prejudice stating that, "even if Nielsen could have capitalized to some extent upon this turnabout in Sax's testimony, . . . there is no possibility that, in the context of all of the evidence, counsel's failure to do so prejudiced Free." *Free,* 2011 WL 2848838, at *5. It also stated that it agreed with the trial court that "cross-examination might have brought Sax's credibility into question but that, in view of all the evidence, it would have made no difference in the outcome of the trial. *Id.* None of these iterations of the prejudice prong mention "a reasonable probability." An additional mention of prejudice was made with respect to testimony that the court stated "would not have raised any reasonable doubt about Free's guilt of the crimes of recklessly

- 19 -

endangering safety and aggravated battery; and that "[o]ur confidence in the reliability of the trial is not shaken."[1] *Id.*

Thus, the Wisconsin Court of Appeals' decision regarding prejudice is contrary to the law because it misstated the *Strickland* prejudice prong test. Consequently, consideration of the prejudice prong must be *de novo.* *See Thomas v. Clements,* 789 F.3d 760, 768 (7th Cir. 2015); *Mosley v. Atchison*, 689 F.3d 838, 850-51 (7th Cir. 2012) (reviewing prejudice prong *de novo* when state appellate court "did not merely recite the wrong standard or use an inapt shorthand expression of the standard. It applied an incorrect and more onerous standard, and the difference may well have been decisive"). However, given this Court's conclusion with respect to the performance prong of *Strickland*, any such analysis would not affect the outcome and will not be undertaken.

### *Certificate of Appealability*

Pursuant to Rule 11 of the Rules Governing 28 U.S.C. § 2254 Proceedings, the Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

---

[1] This reference was made with respect to a portion of the ineffective assistance claim not being pursued. However, the Court considers it in ascertaining whether the articulation of the prejudice prong of *Strickland* standard was contrary to Supreme Court law.

This standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (internal quotation marks omitted). The standard "does not require a showing that the appeal will succeed." *Miller-El v. Cockrell,* 537 U.S. 322, 337 (2003). It does, however, require more than a showing of the "absence of frivolity." *Id.* at 338.

The certificate of appealability determination is not a second assessment of the merits. *See Id.* at 7 U.S. 322, 331. The determination involves a threshold inquiry into the debatability of the Court's decision. *Id.* at 336. A claim may be debatable even though every jurist, after the COA has been granted and upon careful consideration of all the evidence, would agree that the petitioner will not prevail. *Id.* at 338. More specifically, "[t]he question is the debatability of the underlying constitutional claim, not the resolution of the debate." *Id.* at 342. Under this standard, having carefully considered the Wisconsin appeals court's application of federal law, this Court declines to grant a certificate of appealability.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

Free's petition for writ of habeas corpus (ECF No. 1) is **DENIED**;

This action is **DISMISSED**;

The Court **DECLINES TO ISSUE** a certificate of appealability; and

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 24th day of August, 2015.

**BY THE COURT:**

**HON. RUDOLPH T. RANDA**
**U.S. District Judge**